# In the United States District Court for the Southern District of Georgia Brunswick Division

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF TSI TRI-STATE PAINTING, LLC, | * | |
| Plaintiff, | * | CV 216-113 |
| v. | * | |
| FEDERAL INSURANCE COMPANY, | * | |
| Defendant. | * | |

**ORDER**

Before the Court is Defendant Federal Insurance Company's ("Federal") Motion to Dismiss or, in the Alternative, to Stay this Action (Dkt. No. 8). For the reasons stated below, Federal's motion is **DENIED.**

**BACKGROUND**

The facts stated herein are taken solely from Plaintiff Tri-State Painting, LLC's ("TSI") Complaint and are assumed to be true, pursuant to Rule 12(b)(6). TSI is a New Hampshire limited liability corporation licensed to do business in Georgia. Dkt. No. 1 ¶ 1. Federal is an insurance company which provides surety bonds to companies entering construction

contracts with the federal government. Id. ¶ 2. Federal was not a party to the contract at issue here. Instead, Federal acted as a surety to the primary contractor, Sauer Incorporated ("Sauer"). Sauer, in turn, entered into a primary contract with Naval Facilities Engineering Command SE (the "Government"). TSI was a subcontractor to this primary contract.

On or about June 24, 2011, the Naval Facilities Engineering Command SE issued a Request for Proposal. Id. ¶ 6. On September 23, 2011, the Government and Sauer entered into a contract for the rehabilitation of Wharf 2 at the Naval Submarine base in Kings Bay, Georgia (the "Project") at a price of $28,126,400.00. Id. ¶ 7. One element of the Project was paint removal and refinishing within Wharf 2. Id. ¶ 8. The Project represented that only a limited area contained lead-based paint.

In spring 2012, Sauer executed a subcontract with CL Coatings for paint removal and replacement. TSI alleges that CL Coatings refused to execute the subcontract because lead paint existed in more areas than stated in the contract. Id. ¶ 13. Subsequently, Sauer entered into a subcontract with TSI (the "Contract") to replace CL Coatings. TSI alleges, however, that it was never informed that lead-based paint existed in areas beyond those stated in the original contract. Id. ¶ 15.



AO 72A
(Rev. 8/82)

Sauer and TSI executed the Contract on June 15, 2012. Id. ¶ 18. During the start of work, TSI discovered lead paint in the air in worksites beyond those stated in TSI's contract with Sauer. Id. ¶¶ 19-22. Sauer then directed TSI to stop work and informed the Government of the problem. The Government did not accept the result. However, additional testing revealed high lead levels in the air. Ultimately, the Government accepted the results and work stopped. Sauer and TSI then began to renegotiate the Contract. Dkt. No. 1 p. 11. Changes to the re-negotiated contract included the purchasing of new equipment and containment systems necessary to mitigate the problems associated with the lead paint. Id. at pp. 11-12.

Work on the Project re-commenced with the new systems in place on July 12, 2013. Id. ¶ 43. On or about August 15, 2013, the containment systems failed due to high winds, and TSI was forced to stop work. Id. ¶ 46. Work restarted, but further delays occurred because containment systems were not ready for additional equipment. Id. ¶ 50.

On September 20, 2013, the Government modified the contract to include an additional $6,843,906.88, with $4,586,874.70 designated for subcontractor lead-paint work, and an additional 384 days beyond the original contract date. Id. ¶ 51. Sauer reserved its rights against the Government because it claimed that this amount was insufficient to cover the additional cost.



AO 72A
(Rev. 8/82)

Id. ¶ 53. Sauer, however, did not pass this time extension on to TSI. Nor did Sauer provide any additional funds for new equipment, which was required due to the lead contamination. Additional problems with the containment systems occurred. Eventually, TSI notified Sauer that it could not effectively work under such conditions. Id. ¶ 53.

On December 31, 2013, TSI requested an additional 141 days to complete the Project, but Sauer did not respond. Id. ¶ 64. Additional delays and mismanagement occurred in 2014-15. TSI ultimately stopped work. Sauer ordered TSI to restart work and TSI refused. TSI alleges that Sauer's series of delays and missteps added additional costs to its work. Id. at pp. 17-24. On or about March 23, 2016, TSI submitted a certified claim to Sauer in the amount of $14,254,752. Id. ¶ 85.

Federal acts as Sauer's surety. TSI also submitted a certified claim to Federal. Neither Sauer nor Federal has paid any sum to TSI. TSI now brings a claim against Federal for a Breach of Payment under the Miller Act. Id.

**DISCUSSION**

The Miller Act provides that all persons contracting "for the construction, alteration, or repair of any public building or public work of the United States" at a cost exceeding $100,000 shall provide a payment bond "for the protection of all persons supplying labor and material." 40 U.S.C. §§ 3131(b),



AO 72A
(Rev. 8/82)

3131(b)(2). The Miller Act allows any person who has furnished labor or material for the construction of a "public building or public work" and who has not been paid in full to bring a civil action on the payment bond in federal district court. Id. §§ 3133(b)(1), 3133(b)(3).

Federal does not dispute that the Miller Act applies to this case. Instead, Federal argues that TSI's claims must be dismissed because the Contract bars recovery on TSI's claims for delay, disruption, or interference under the Miller Act. Dkt. No. 14 p. 2-4. Alternatively, Federal argues that this action should be stayed pending renegotiation of the agreement between Sauer and the Government. Dkt. No. 8-1 p. 11. The Court addresses each argument in turn.

## I. Federal's Motion to Dismiss

The Court first addresses Federal's Motion to Dismiss. When ruling on a Rule 12(b)(6) motion to dismiss, a district court must accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations



AO 72A
(Rev. 8/82)

respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

Federal argues that Paragraph 3 of the Contract provides it an affirmative defense against TSI's claims. Dkt. No. 14 p. 2. Paragraph 3 waives all damages for delays under the condition that no extension was requested. Dkt. No. 1-3. Federal argues that Paragraph 3 warrants dismissal of any action based upon delay because 1) Paragraph 3 applies regardless of whether a time extension was actually granted by Sauer and 2) delays in the Project were within the parties' contemplation. Dkt. No. 14 p. 4-6.

Although this action was brought under the Miller Act, this is effectively a contract case, and the law of the state in which the agreement was executed and was to be performed governs. U.S. f/u/b/o Seminole Sheet Metal v. SCI, Inc., 828 F.2d 671, 675 (11th Cir. 1987). Therefore, Georgia contract law governs this case, despite the federal cause of action.

Under Georgia law, "no-damages-for-delays" provisions like Paragraph 3 are enforceable. L & B Constr. Co. v. Ragan Enters., 482 S.E.2d 279, 280 (Ga. 1997). No-damages-for-delay clauses may be unenforceable, however, if subject to a condition



AO 72A
(Rev. 8/82)

precedent which does not occur. United States f/u/b/o Pertun Constr. Co. v. Harvesters Grp., Inc., 918 F.2d 915, 919 (11th Cir. 1990).

Part one of Paragraph 3 plainly prevents TSI from obtaining damages for delay:

> Sauer shall not be liable to Subcontractor for any delay, disruption or interference to Subcontractor's Work caused by . . . (10) unexpected soil or other physical conditions . . . (13) any other cause beyond Sauer's direct control; provided, however, Sauer will cooperate with Subcontractor in submitting against the Owner any just claim arising from any such delay that is permitted by the General Contract.

Dkt. No. 1-3 ¶ 3.

However, part two subjects this clause to a condition precedent:

> Should the Subcontractor's Work be delayed, disrupted or interfered with solely as a result of the acts or omissions of Sauer or anyone employed by Sauer on the Project, then Subcontractor shall receive an extension of time equal to the actual delay to critical path activities caused by these delays, as determined by Sauer. . . . An extension of time, as determined by Sauer, or the decision that no extension of time shall be allowed, shall be the Subcontractor's sole remedy for delay. In exchange, Subcontractor expressly waives the right to bring against Sauer any claim for damage for delay, inefficiency, disruption, acceleration, interference, extra work resulting from such delay, extended overhead, wage escalation, overtime wage provisions, lost opportunity or lost profit or financial impact on Subcontractor's other projects.
>
> Id.

Federal argues that subpart (13) of part one is the condition precedent, rather than part two. Specifically,



AO 72A
(Rev. 8/82)

Federal reads part one to mean that Sauer need only "cooperate" with TSI in a claim against the Government in order for the no-damage-for-delay clause to take effect. Dkt. No. 14 p. 5. However, this interpretation ignores the entire second paragraph, which creates a condition precedent to the first. Furthermore, it is plausible subpart (13) is one of thirteen scenarios in which Sauer is not liable for delay—not a condition precedent to the other twelve.

Regarding the second part, Federal concedes that it creates a condition precedent to the no-damages-for-delay clause. Dkt. No. 14 p. 6. Federal asserts, however, that "an extension of time or the decision that no extension of time" was TSI's only remedy under the Contract. However, TSI alleges that no decision regarding an extension of time was ever made. Dkt. 1 ¶¶ 54, 64. Therefore, even if an extension of time or a decision regarding one was TSI's only remedy, TSI alleges that neither occurred.

Federal also alleges that the "delays in question" were within the contemplation of the parties and that the parties agreed that "Sauer would not be liable for its own acts or omissions." Dkt. No. 14 p. 6. Paragraph 3 does indeed indicate the parties' contemplation that some "unexpected" condition could delay the Project. Dkt. No. 1-3 ¶ 3. However, in order to be free from delay-damage liability, Sauer needed to either



AO 72A
(Rev. 8/82)

provide an extension or make a decision regarding whether one would be given. Id. Again, TSI alleges that Sauer gave no such extension and made no such decision. Therefore, regardless of whether a delay was contemplated, Paragraph 3's effectiveness relies on the factual question of whether Sauer gave notice of an extension or not—which cannot be decided on a motion to dismiss.

Finally, the Court notes that while Federal relies heavily on subsection (13), its reliance is based on a key factual assumption: that the delays due to excess lead levels were "beyond Sauer's direct control." Id. TSI's complaint alleges that Sauer in fact knew about the excess lead levels from its previous contract with CL Coatings and, therefore, may have been able to prevent TSI's delays. Dkt. No. 1 ¶¶ 13, 15. It is certainly plausible that Sauer knew about the excess lead paint issue and failed to notify TSI. Therefore, taking all allegations as true, the Court denies Federal's Motion to Dismiss.

Federal repeatedly points to a "TSI Claims" document from TSI which appears to indicate the extent of TSI's damages for various claims in this case. TSI argues that the Court should disregard this document as it is not "central" to TSI's Complaint. The Court agrees. At the motion-to-dismiss stage, documents attached to a motion to dismiss are not properly



AO 72A
(Rev. 8/82)

considered by the court unless (1) they are central to the plaintiff's claim, such as a contract in a breach-of-contract action, and (2) their authenticity is not challenged. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

Essentially, the Plaintiff's Complaint must be "based on" the TSI Claims document in order for the Court to consider it at this stage. Carter v. HSBC Mortg. Servs., Inc., 622 F. App'x. 783, 787 (11th Cir. 2015). This is plainly not the case here. TSI's Complaint is based on the Contract and its provisions, not the TSI Claims document. Dkt. No. 1. Regardless, the Court finds that the TSI Claims document is non-dispositive at this stage. The TSI Claims document does nothing to establish that Sauer is not liable for breach of contract—only that TSI may believe that the Government could be responsible for some of those damages. This is an insufficient basis for the Court to grant a motion to dismiss.

## II. Motion to Stay

Federal alternatively argues that this case should be stayed pending negotiation between Sauer and the Government regarding additional compensation. Dkt. No. 8-1 p. 10. The Court should not exercise its power to stay proceedings lightly. "When confronted with a motion to stay, the district court must consider its own interests in an orderly disposition of its caseload, and the parties' competing interests in the two



AO 72A
(Rev. 8/82)

actions." Markel Int'l Ins. Co. v. O'Quinn, 566 F. Supp. 2d 1374, 1376 (S.D. Ga. 2008) (citation omitted). The power to stay a proceeding is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). A district court therefore has broad discretionary authority in determining whether a stay is appropriate. CTI-Container Leasing Corp. v. Uiterwyk Corp., 685 F.2d 1284, 1288 (11th Cir. 1982); see also Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997) ("[D]istrict courts enjoy broad discretion in deciding how best to manage the case before them."). In making its determination, a court "must . . . examine the relative prejudice and hardship worked on each party if a stay is or is not granted." Pise v. Express Marine, Inc., 2008 WL 2163920, at *3 (S.D. Ala. May 19, 2008).

The Miller Act controls whether this action should be stayed. The Miller Act provides a federal cause of action for subcontractors seeking payment in construction contracts involving the government. If not paid within 90 days of completing its work, a subcontractor may sue and collect judgment on the surety bond. 40 U.S.C. § 3133(b)(1). The Miller Act is "highly remedial in nature" and "entitled to a liberal construction and application in order to properly



AO 72A
(Rev. 8/82)

effectuate the Congressional intent to protect those whose labor and material go into public projects." United States ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957) (references and citations omitted).

However, the subcontractors' Miller Act rights may be waived where the subcontract contains a provision making the disputes clause of the primary contract expressly applicable to the subcontract, and where the subcontract contains an express waiver of the subcontractor's Miller Act remedy. United States v. David Boland, Inc., 922 F.Supp. 597 (S.D. Fla. 1996). Thus, the Court looks to the four corners of the contract to determine if both conditions have been met.

Federal argues that the Contract binds TSI to any dispute resolution Sauer engages in with the Government. Dkt. No. 22 p. 12. TSI argues that the Contract does not require dispute resolution between TSI and the Government, but only between TSI and Sauer. Id. at p. 13. It is undisputed that Sauer has not requested that TSI engage in arbitration with it. Therefore, the only question before the Court is whether it should stay this case while Sauer negotiates its contract with the Government.

Federal points to three provisions in the Contract: Paragraphs 3, 9, and 14. However, the Court finds that only Paragraph 14, "Claims;Dispute Resolution" is relevant:



AO 72A
(Rev. 8/82)

> If Sauer and [TSI] have a dispute arising under or relating to the Agreement or its breach, which involves the correlative rights or duties of Owner, such dispute shall be decided in accordance with the General Contract. . . . [TSI] and its surety, if any, shall be bound to Sauer to the same extent that Sauer is bound to Owner by the terms of the General Contract, and by any decisions or determinations made under the General Contract by any authorized person, board, court, or other tribunal.

Federal urges the Court to compare Paragraph 14 to the contract provision in a similar case, United States v. David Boland, Inc., 922 F. Supp. 597 (S.D. Fla. 1996). As is the case here, Boland involved a subcontractor's claim against a general contractor under the Miller Act. Id. at 598. The question presented before the Boland court, like the one here, was whether the subcontractor's claims should be stayed pending the resolution of the prime contract between the government and the primary contractor. Id. The Court found in the affirmative, finding that the contract contained "clear and unambiguous" language indicating that the subcontractor's action was to be stayed. Id. at 599. However, the Court finds no such clear language here. Where the provision in Boland expressly indicated that the subcontractor agreed to a stay in the event of mediation between the prime contractor and the government, no such language is present in this case. In fact, the word "stay" is plainly absent from the above provision.

Furthermore, the Court is wary of granting a stay that would effectively be indefinite. The Eleventh Circuit has



AO 72A
(Rev. 8/82)

previously indicated disfavor regarding indefinite stays. Ortega Trujillo v. Conover & Co. Commc'ns, 221 F.3d 1262 (11th Cir. 2000); King v. Cessna Aircraft Co., 505 F.3d 1160 (11th Cir. 2007). Federal has provided no compelling reasons why this case should be stayed indefinitely, nor does the contractual language indicate mandatory waiver of TSI's Miller Act rights. Thus, the Court denies Federal's request to stay these proceedings.

**CONCLUSION**

For the reasons set forth above, it is hereby ordered that Defendant Federal Insurance Company's Motion to Dismiss or, in the Alternative, to Stay this Action (Dkt. No. 8) is **DENIED**.

**SO ORDERED**, this 20th day of December, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA



AO 72A
(Rev. 8/82)