IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF TSI TRI-STATE PAINTING, LLC,<br><br>　　　　Plaintiff/Counter-Defendant,<br><br>　v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>　　　　Defendant/Counter-Claimant. | CIVIL ACTION NO.: 2:16-cv-113 |

**O R D E R**

This matter is before the Court on Plaintiff Tri-State Painting, LLC's Motion to Exclude Certain Opinion Testimony of Michael Harris. Doc. 129. Defendant Federal Insurance Company ("Federal") filed a Response, and Plaintiff filed a Reply. Docs. 138, 147. On November 15, 2021, the Court held a hearing on Plaintiff's Motion to Exclude, at which counsel for both Plaintiff and Federal appeared. Dkt. entry dated Oct. 12, 2021; Doc. 158. Following the hearing, the parties submitted supplemental briefing on the matter. Docs. 161, 162.

For the following reasons, the Court **GRANTS** Plaintiff's Motion to Exclude. Harris is not permitted to offer expert testimony about the apportionment of responsibility for containment-related delays using figures provided by Federal's counsel (e.g., the Government is responsible for 75% of the containment-related delays and the subcontractors, including Plaintiff TSI, are responsible for the remaining 25%). This Order does not otherwise limit Harris' testimony, and he is generally permitted to testify in accordance with the Federal Rules of Evidence.

**BACKGROUND**

Plaintiff TSI sues Federal over a project at the Naval Submarine Base in Kings Bay, Georgia. Doc. 1. Plaintiff worked as a subcontractor for the general contractor, Sauer, Inc.[1] Doc. 129-1 at 1–2. The project had a series of delays, and the parties dispute who is responsible for the delays. Responsibility for the delays impacts the amount that may be owed under the contract for work Plaintiff performed. The reasons included delays due to weather and performance issues. Doc. 129-2 at 9–13. Additionally, significant delays arose from detection of lead paint at the site, which had to be removed before the project could continue. The removal of the lead paint also required use of a containment system. There were significant delays related to the implementation and execution of the containment system. Id. These "containment-related delays," and Federal's expert's anticipated testimony on who bears responsibility for them, are the focus of Plaintiff's challenge in the instant Motion.

Federal hired Michael Harris, a civil engineer with Secretariat International, to perform a delay analysis of the project. Id.; Doc. 129-2. Harris has an undergraduate degree in civil and environmental engineering, as well as a juris doctorate, and has worked as a licensed engineer for more than 30 years.[2] Doc. 138 at 1. Harris has previously testified as an expert in arbitrations, boards of contract appeals, and state court proceedings. Id. Harris offers a comprehensive report and set of opinions on the allocation of responsibility for delays during the course of the project. Doc. 129-2. Harris' opinions focus on determining allocation of responsibility for the days of delay and, specifically, delays associated with TSI's work. Id. at 9–

---

[1] Federal represents Sauer Inc.'s interests in this litigation. For convenience, the Court treats Federal and Sauer as interchangeable in this Order.

[2] Plaintiff does not challenge Harris' qualifications at this time. A summary of Harris' qualifications is provided only as background. The Court makes no finding as to whether Harris is qualified to offer any particular opinion.

12. Harris provided two reports assigning responsibility for project delays—his Independent Report and Rebuttal Report. See generally id. Harris' Independent Report involves an analysis on the causes of various delays occurring during the project and who bears responsibility for those delays—including responsibility for containment-related delays. Id. at 88–159. Harris' Rebuttal Report offers similar opinions and also an analysis of Plaintiff's expert's opinions on delays. Id. at 7, 26–58. In his Rebuttal Report, Harris reached conclusions about which delays were TSI's responsibility and for which delays TSI should be compensated. Id. at 14–17. In sum, in both his Independent and Rebuttal Reports, Harris generally provides his expert opinions on which party was responsible for which delays based on his own analysis of the project.

The parties disagree over one aspect of Harris' opinions contained in his Reports. In the Independent and Rebuttal Reports, Harris states Federal "has determined that delays related to the containment should be apportioned so that NAVFAC bears 75% of the responsibility and Sauer's subcontractors bear the remaining 25%."[3] Id. at 18; see also id. at 93, 95. Harris explains he did not validate the 75/25 allocation figure for containment delays. Id. at 18. The parties agree the 75/25 allocation figure was provided to Harris by Federal's counsel and Harris has not had any opportunity to determine the accuracy of the figure. Indeed, Federal acknowledges it has not disclosed the basis for the 75/25 allocation figure to Plaintiff, instead explaining only it intends to "prove [the figure] at trial." Doc. 138 at 5. Nonetheless, Harris

---

[3]  NAVFAC is the United States Naval Facilities Engineering Command, which Sauer and TSI performed work for at the Kings Bay Naval Submarine Base and which was ultimately responsible for overseeing the project.

provides a new assessment of overall responsibility for all delays utilizing the 75/25 allocation figure for containment-related delays.  Doc. 129-2 at 18, 93, 95.

To be clear, the 75/25 allocation figure provided by Federal's counsel is distinct from Harris' own, independent opinions about the parties' responsibility for containment-related delays.  Harris initially determined Plaintiff TSI is responsible a number of days of delay.  Id. at 94, 155.  This determination was based on his experience and expertise and review of several relevant aspects of the project.  Id. at 101–154.  Additionally, in his Rebuttal Report, Harris addressed expert opinions by JS Held, Plaintiff's expert, and revised his own opinions about TSI's responsibility for certain delays, including containment-related delays.  Id. at 82.  Harris provides a robust analysis of the JS Held opinion.  Id. at 13–15, 24–50.  Harris explains how JS Held's conclusions and methodology influence his own analysis—even leading him to make revisions to his initial opinion.  Id. at 55–59.  That is, Harris provided opinion based on his expertise about the responsibility for containment-related delays at issue in this suit, both initially and in consideration of JS Held's opinions.

Despite forming his own opinions about containment-related delays, Harris also utilized the 75/25 figure provided to him by Federal's counsel.  Id. at 83.  Harris notes use of Federal's counsel's figure resulted in removing 77 compensable delays from Plaintiff and results in Plaintiff only having 64 compensable days.  Id.  Harris provides no reasoning for his adjustment, other than reliance on the 75/25 figure.[4]  Harris, in his Reports and testimony, was candid the 75/25 allocation was not the result of him applying his expertise to determine who was responsible for the delays, but was simply given to him by Federal's counsel, who informed him

---

[4] Harris also utilized a figure assuming 50% NAVFAC containment responsibility and 25% NAVFAC containment responsibility, which are also unsupported and are equally unreliable.  Doc. 129-2 at 84–85.  Unlike the 75/25 figure, there is no indication Federal relies on these other allocation figures.

4

they would prove this is the correct allocation at trial. Doc. 129-2 at 18; Doc. 129-3 at 4–5. While Harris did explain how such responsibility for delay would impact his opinions, he does not state the 75/25 figure is accurate or otherwise correct. Indeed, Harris states expressly he did not "validate" the 75/25 figure. Id. at 18.

In its Motion, Plaintiff does not challenge Harris' own, independent opinions on delay, his revisions in light of the JS Held findings, or his ability to testify to these conclusions, regardless of the type of delay or the allocation of responsibility. Instead, Plaintiff challenges Harris' opinions on delay responsibility that are based on the 75/25 figure for containment-related delays provided by Federal's counsel. Id. at 2–87. Plaintiff contends Harris should not be permitted to offer opinions about delay responsibility using a 75/25 containment-related delay allocation figure, where that figure is merely unsupported supposition offered by Federal's counsel. Doc. 147.

## DISCUSSION

**I.    Federal Rule of Evidence 702 and Daubert**

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). In this Circuit, courts routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702. As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of

>   scientifically, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent it "concern[s] matters beyond the understanding of the average lay person and logically advance[s] a material aspect of the proponent's case."  Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591); Frazier, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person.'"  Jackson v.

Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing Frazier, 387 F.3d at 1262).  Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."  Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence."  Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert, 509 U.S. at 596.

**II.     Federal Fails to Establish Harris' Opinion on Delay Apportionment Using the 75/25 Figure Is Based on Reliable Methodology**

Plaintiff argues Harris' opinions assuming an allocation figure of 75/25 responsibility for containment-related delays should be excluded because it relies on information unknown to Harris and is nothing more than a "plug number" provided by counsel.  Doc. 129-1 at 5.  Plaintiff contends Harris' opinions, using this plug number, are not based on a reliable methodology.  Id. at 6–7; Doc. 147 at 3–6.

7

Federal opposes Plaintiff's Motion.  Doc. 138.  Federal contends Harris' reliance on the figure is permissible because Federal will prove at trial a 75/25 allocation of responsibility is correct.  Federal also argues experts are permitted to offer opinions based on assumptions and testify to hypotheticals, and Harris' opinions are just that.  Instead of exclusion, Federal argues the proper way to attack Harris' testimony and the figure he relies on is through cross-examination at trial.  Id. at 2, 5–7.

While Federal is correct experts are permitted to offer opinions that rely on assumptions, those assumptions must have some basis in the record.  See Tillman v. C.R. Bard, Inc., 96 F. Supp. 3d 1307, 1320 n.14 (M.D. Fla. 2015) (declining to exclude expert opinion based on assumption for which expert offered some support but noting "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record) (quoting McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000)).  But, "the facts relied upon by an expert 'must find some support . . . in the record' and 'must be supported by more than subjective belief and unsupported speculation.'"  In re Delta/Airtran Baggage Fee Antitrust Litig., 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017) (quoting McLean, 224 F.3d at 800–01; see also Vincent v. Am. Honda Motor Co., No. CV 108-067, 2010 WL 11537726, at *5 (S.D. Ga. July 1, 2010) ("There must 'be sufficient facts already in evidence or disclosed by the witness as a result of his investigation to take the testimony out of the realm of guesswork and speculation.'") (quoting Polk v. Ford Motor Co., 529 F.2d 259, 271 (8th Cir. 1976)); Grand Slam Club/Ovis v. Int'l Sheep Hunters Ass'n Found., Inc., No. 2:06-CV-4643, 2008 WL 11375373, at *4 (N.D. Ala. Jan. 15, 2008) (explaining expert testimony should be excluded when it relies on assumptions without support in the record).

Here, Federal has not shown the 75/25 containment-related delay figure has any support in the record.  Instead, Federal offers nothing but conclusory statements there is "ample support" for the apportionment of delay figure.  Doc. 138 at 5.  In Harris' deposition and Reports, he admits the 75/25 allocation of responsibility for containment-related delays is merely an unverified plug number provided to him by Federal's counsel.  Doc. 129-2 at 18; Doc. 129-3 at 4–5.  Federal did not ask Harris to validate the 75/25 figure, and there is no indication Harris attempted to do so.  Doc. 129-2 at 18.  Notably, Harris did not perform an analysis of Federal's allocation, as he did with JS Held's expert report.  Instead, Harris made arbitrary adjustments to his own expert opinions based on Federal's counsel's representations, and he relies on Federal's assurance it will prove the figure at trial.  But, Federal, as the proponent of Harris, is required to provide support for the figure at this juncture—which it has failed to do.  Allison, 184 F.3d at 1306 ; Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005) (explaining it is the proponent of the expert's burden to prove reliability by a preponderance of the evidence).[5]

Federal's failure to show the 75/25 containment-related delay figure has support in the record is what distinguishes the instant case from the cases on which Federal relies.  For example, in Vincent, 2010 WL 11537726, on which Federal relies, doc. 138 at 6, the Court found the expert's "assumptions are founded upon sufficient facts in the record."  This finding was central to the Court determining the expert's testimony was sufficiently reliable.  Id. at *5–6; see also Mcgarity v. FM Carriers, Inc., No. CV410-130, 2012 WL 1028593 (S.D. Ga. Mar. 26, 2012) (finding the expert relied on evidence when forming his opinion); White v. Hall, No. 5:18-cv-72, 2020 WL 653833 (M.D. Ga. Nov. 6, 2020) (finding an expert opinion reliable because the

---

[5] Federal refers to Plaintiff TSI as having the burden.  Doc. 138 at 5.  This is incorrect.  Federal, as the proponent of Harris, has the burden of showing his testimony is admissible.  Allison, 184 F.3d at 1306 (11th Cir. 1999); Rink, 400 F.3d at 1292.

9

opinion had factual support). In contrast, Harris' opinions based on the 75/25 containment-related delay figure—a figure that plainly has no support in the record—should be excluded. Buland v. NCL (Bahamas) Ltd, 992 F.3d 1143, 1151 (11th Cir. 2021) ("The unsupported assumption made [the expert's] testimony unreliable."); Reed v. Royal Caribbean Cruises Ltd., No. 19-24668-CIV, 2021 WL 2592888, at *3–5 (S.D. Fla. May 3, 2021) (excluding plaintiff's expert's testimony where plaintiff failed to identify any portion of the record supporting the expert's assumptions); Go Med. Indus. Pty, Ltd. v. Inmed Corp., 300 F. Supp. 2d 1297, 1317 (N.D. Ga. 2003) (excluding expert testimony where the opinion "speculate[s] and assume[s] premises without any indication of support").

It is important to note Harris provided his own, independent analysis of containment-related delay responsibility, where he assigned delay responsibility among the parties, based on his experience and expertise and review of relevant aspects of the project. Doc. 129-2 at 127–52, 155. When performing his analysis, Harris did not reach the 75/25 allocation for containment-related delays—he came up with his own expert opinion on responsibility for these delays. Id. at 76, 148. Federal, however, directed Harris to replace that portion of his expert opinion with its own conclusions, the 75/25 figure. Federal essentially asked Harris to assume his own expert opinion about containment-delay responsibility was incorrect, and to, instead, accept Federal's own conclusion. This approach is impermissible because Federal's conclusion—the 75/25 figure—is not based on any discernible methodology or anything in the record. Federal simply told Harris 75/25 is the correct allocation and assured him it would be proven at trial. Federal could have offered some support for 75/25 figure in its Response to Plaintiff's Motion, but it failed to do so. Instead, Federal still maintains its "wait and see" approach attempting to assure

all that the figure will be eventually proven at trial.  To be clear, Federal has had ample opportunity to provide some explanation for the 75/25 figure but has failed to do so.

It is also noteworthy that containment-related delay responsibility is not a trivial matter in this litigation.  Containment-related delays represent a significant component of overall delays, and allocation of those delays will likely have a material impact on responsibility for delays generally.  Federal's position would effectively excise a major component of Harris' opinion (which was the result of detailed expert analysis) and replace it with an unfounded assumption.  Any opinion Harris intends to offer based on that unfounded assumption would undoubtedly be material to the case, but also inherently unreliable.

Federal attempts to salvage this portion of Harris' opinions by arguing Harris' use of the 75/25 allocation figure is akin to removing one figure in a formula and replacing it with another.  Doc. 138 at 9; Doc. 158 at 6–7, 9.  The problem is Harris did not use a formula in forming his opinion.  He engaged in a comprehensive analysis of various containment-related delays and offered individualized opinions on those delays.  Indeed, Federal's counsel had to create a fictitious formula for the purposes of even making this argument.  Doc. 138 at 8; Doc. 158 at 8–10 (during argument Federal's counsel was unable to articulate any particular formula used by Harris).  Contrary to Federal's counsel's assertions, there is no discernible formula utilized by Harris, and using the 75/25 allocation figure is not akin to merely swapping out variables.

In sum, Harris developed expert opinions about responsibility for containment-related delays based on his specialized knowledge and facts he identified during his investigations.  Federal wants Harris to replace his own independent expert opinion on containment-related delay responsibility with a figure provided by Federal's counsel—where that figure has no basis in the record—and then offer different expert opinions based on that unsupported assumption.

Opinions from Harris based on this unsupported assumption would not be reliable and, therefore, must be excluded.

## CONCLUSION

For the foregoing reasons, the Court, the Court **GRANTS** Plaintiff's Motion to Exclude. Federal has not met its burden in showing Harris should be permitted to offer opinions on responsibility for delays, where those opinions are based on Federal's counsel's unsupported 75/25 containment-related delay figure. Harris is not permitted to offer expert opinion testimony based on this allocation. Harris is otherwise permitted to testify, including on his independent conclusions regarding containment delay. Because the Court finds the opinion is not reliable, the Court declines to address whether Harris' opinion is helpful.

**SO ORDERED**, this 13th day of January, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA